# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT COOPER, #209556 | * |
| | * |
| Plaintiff, | *   Civil Action No. JFM-13-3872 |
| | * |
| v | * |
| | * |
| RODERICK SOWERS, | * |
| J. MICHAEL STOUFFER, Commissioner of Correction, | * |
| BOBBY P. SHEARIN, North Branch Corr. Institution, | * |
| G.B. McALPINE, | * |
| N.A. KLINK, | * |
| J.L. HARBAUGH, | * |
| KEVIN L. LAMP, the Chaplain's Office, | * |
| PARRISH KAMMULF, Dietary Manager, | * |
| MICHAEL GUTILLO, | * |
| C. GILPIN, | * |
| J. PAYNE, | * |
| J.T. ZAIS, | * |
| OFFICER BAUER, | * |
| JAMES SMITH, | * |
| MARY JO ROSE, | * |
| P.H. PENNINGTON, | * |
| FRANK B. BISHOP, JR. Warden of Western Correctional Institution, | * |
| RANDY WATSON, | * |
| R. STOTLER, | * |
| D. BEACHY, | * |
| W.L. LEYDIG, | * |
| RICHARD J. GRAHAM, JR., | * |
| JOHN/JANE DOE, | * |
| L. MOULDIN, aka as Moulden, | * |
| RANDY ADKINS, | * |
| T. YUTZY, | * |
| D. BITTINGER, | * |
| D. BROADWATER, | * |
| OFFICER GOLDEN, aka Gonoas | * |
| ROBERT MANUEL, | * |
| R. DOLLY, | * |
| V. WARNICK, aka as Warnyck, | * |
| BRUCE LILLER, Psychology Dep't., | * |
| MS. HART, | * |

| | |
|---|---|
| RONALD SHANE WEBER, | * |
| KEITH ARNOLD, | * |
| J. SELLERS, | * |
| | * |
| Defendants | * |
| | *** |

## MEMORANDUM

This matter is before the court on defendants' supplemental motion to renew their motion for summary judgment. ECF 41. Self-represented plaintiff Robert Cooper filed an opposition. ECF 43. After considering the pleadings, exhibits, and applicable law, the court concludes a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For reasons to follow, defendants' supplemental motion to renew their motion for summary judgment (ECF 41) will be GRANTED.

## BACKGROUND

Robert Cooper is presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland. On December 23, 2013, Cooper filed a fifty-one page complaint which named more than forty defendants[1] and raised a litany of claims arising from various incidents at WCI and North Branch Correctional Institution ("NBCI") at different periods of time. Cooper's claims against defendants included: failure to protect him from harm, improperly restricting his access to the Administrative Remedy Procedure ("ARP") process, unlawful infringement on his religious observance, denial of his meal tray, improper confiscation of his personal property, retaliation, interference with his mail, and inadequate medical and mental health care.

On September 10, 2014, defendants filed a motion to dismiss or, in the alternative, motion for summary judgment with declarations and verified exhibits. ECF 27. Cooper filed an opposition reply on October 24, 2014, expressing his general disagreement with defendants' response. ECF 33. No declarations or verified exhibits accompanied his opposition. *Id.*

---

[1] Service was not obtained on V. Warnick, a former employee of NBCI's Psychology Department who resigned on December 6, 2013. ECF 41-1 n. 12.

On September 4, 2015, the court denied in part and granted in part defendants' motion to dismiss or, in the alternative, motion for summary judgment. ECF 34, 35. Summary judgment was denied as to Cooper's claim that he was provided inadequate mental health care at NBCI, subject to renewal by defendant of their dispositive motion within sixty days with verified exhibits and affidavits. *Id.* Summary judgment was granted in favor of defendants as to Cooper's other claims. *Id.*

On October 5, 2015, Cooper, proceeding pro se, filed a notice of appeal of the court's September 4, 2015 order. ECF 38. The appeal is before the United States Court of Appeals for the Fourth Circuit. *Cooper v. Roderick Sowers*, CA4 #15-7579.[2]

On November 3, 2015, defendants filed the supplemental motion to renew their motion for summary judgment with supporting exhibits, including verified copies of Cooper's mental health records from NBCI. ECF 41, ECF 41-4.

## DISCUSSION

The facts of this case were examined in the court's earlier issued memorandum (ECF 34), which is incorporated by reference. These facts are not repeated, except as necessary to provide context and to resolve defendants' pending motion.

---

[2] *See* https://ecf.ca4.uscourts.gov/cmecf/servlet/TransportRoom?servlet=CaseSummary.jsp?CaseNum=157579&dktType=dktPublic&incOrigDkt=Y&incDktEntries=Y. To the extent Cooper intended to file a notice of interlocutory appeal as to the ruling on his mental health claim, it "does not render void for lack of jurisdiction acts of the trial court taken in the interval between the filing of the notice and the dismissal of the appeal." *United States v. Green*, 882 F.2d 999, 1001 (5th Cir. 1989). A court is not deprived of jurisdiction to act on motions (dispositive or other) submitted by the parties or that parties are free to disregard court orders during the pendency of the interlocutory appeal. A contrary rule would leave a court powerless to prevent intentional dilatory tactics. *Id.* An appeal only "divests a trial court of jurisdiction over 'those aspects of the case involved in the appeal.' " *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). A district court may take action "in aid of the appeal," or to maintain the status quo, *see e.g., International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014 (2d Cir.1988). Resolving the pending motion may serve to clarify Cooper's claims on appeal.

### A. Mental Health Claim

The gravamen of Cooper's mental health claim is that he was provided constitutionally inadequate mental health treatment for the "battered person syndrome," post-traumatic stress disorder (PTSD), and paranoia he reports he suffers as a result of his placement in a cell with other inmates. As relief, Cooper asks to be assigned to single cell housing. Cooper was initially transferred from WCI to NBCI on February 18, 2008, where he remained housed until his transfer back to WCI on September 25, 2012. ECF 41-1 at 4-9.

He avers that he was denied psychological treatment between at NBCI on October 31, 2011,[3] February 17, 2012, and March 19, 2012 by Vicki Warnick, on November 16, 2011, by Bruce Liller, on December 21, 2011, by Laura Moulden, and on January 6, 2012, by Mr. Banks.[4] As relief, Cooper requests damages and injunctive relief to require defendants to cease depriving him of mental health treatment, a mental health evaluation at the mental health unit in Jessup, Maryland, and placement on single inmate cell status for psychological reasons. (ECF 1-1, pp. 27-31).

### B. Mental Health Records

Defendants have filed verified copies of Cooper's mental health records for the period of October of 2011 and March of 2012.[5] Cooper's psychological record also reflects that between December 14, 2011 and March 28, 2012, he filed some 36 complaints in the psychology department, including 14 filed on December 14, 2011 alone. *Id.* pp. 4-17, 19, 22-27, 28, 30-31,

---

[3] There is no record for November 16, 2011. Cooper was seen for a behavioral health visit by nurse Mindy Baker on November 30, 2011. *See infra* p. 5.

[4] Mr. Banks is a former employee of the Psychology Department at NBCI who was not served and was dismissed from this lawsuit. (ECF. Nos. 34-35).

[5] Defendants filed Cooper's mental health records with their initial dispositive motion to address the mental health care provided to him at WCI. ECF 27-15; ECF 34 at 12-14.

4

33, 39-46, and 53-56. Cooper copied correspondence to the Psychology Department that was unrelated to psychological issues. *See id.*

None of Cooper's mental health records corroborates he suffers from 'battered person syndrome," post-traumatic stress disorder (PTSD), or paranoia or mental illness.

On November 30, 2011, Cooper was seen by Mindy Baker, R.N. for reports that he was entertaining thoughts of hurting others. Baker indicated Cooper's denied suicidal ideations and his cellmate was safe. She recommended monitoring Cooper and referring him to a behavioral health clinic for follow-up. ECF 41-4 at 2.

On December 6, 2011, Baker met with Cooper again. Cooper stated he had thoughts of hurting correctional officers. Cooper denied suicidal thoughts. Baker recommended monitoring Cooper and referring him to a behavioral health clinic for follow-up. *Id.* at 3.

On December 14, 2011, Cooper wrote to the Warden that Liller and Warnick deprived him of psychological services on October 31, 2011. Cooper expressed concern that cancelled appointments had yet to rescheduled, asserted the delay constituted an "illegal practice of depriving psychological mental health services," and requested that it "cease and desist." *Id.* at 8.

On December 21, 2011, Laura Moulden, a licensed clinical professional counselor, met with Cooper in response to his request to discuss his "emotional problems related to a fight and stabbing this past summer." *Id.* at 18. Moulden's notes of the meeting read:

> When explored, inmate started talking about how custody staff has it in for him and he wants either transferred [sic] to another cell or prison. I stated to inmate that he requested services from psychology but this does not appear that he wants to talk about psychological issues as the request stated. When I attempted to redirect him on the reason for the request he persisted on talking about non psychological issues and was advised to speak to custody and case management about his concern. Inmate demonstrated competence during today's session, as evidenced by his MSE being WNL and his self-stated denial of any mental health diagnoses.

Moulden recorded as "severe" Cooper's Axis IV (psychosocial and environmental problems) related to his "housing, legal system/crime." *Id.* For the Axis V, Global Assessment of Functioning (GAF), Moulden diagnosed Cooper at 80 (transient symptoms that are expected to reactions to social factors)[6]

On January 5, 2012, Cooper reported to Baker he was entertaining thoughts of hurting others due to fears for his own safety. *Id.* at 20. He denied feeling suicidal. Cooper reported that he did not feel his problems were being addressed adequately. Baker recommended continuing to monitor Cooper, and notified Warnick and Sgt. McAlpine, a member of the correctional staff. *Id.*

The same day, January 5, 2012, Cooper submitted a request for a psychology consultation. He wrote he was assaulted by his cellmate January 31, 2012.[7] Cooper stated this was "the second time in five months...this double celling is making me paranoid." *Id.* at 19. A note on the request signed by Moulden reads "seen by Mr. Liller and Dr. Banks on January 6, 2012, subsequent to him writing this request. " *Id.*

On January 6, 2012, Shakora H. Banks, Psy A. met with Cooper, Liller, and Mr. Banks.[8] *Id.* at 21. The notes of the meeting read:

> When explored, inmate starting talking about how the custody staff has it in for him and he wants either to transfer to another cell or prison. He states that he is feels [sic] that he needs a single cell because of anticipated threats from other inmates. He has not been threatened by any inmates, and does not have a psychiatric diagnosis, which would permit a single cell. He denies any serious

---

[6] Defendants provide no explanation of Moulden's diagnosis. The court infer reference is to the diagnosis levels standardized according the Diagnostic and Statistical Manual of Mental Disorders ("DSM") in use at the time and published in the DSM-4 by the American Psychiatric Association. https://www.dhs.state.or.us/caf/safety_model/procedure_manual/appendices/ch4-app/4-5.pdf.

[7] It is not clear why Cooper complained of an incident that allegedly took place later that month.

[8] It appears Shakora Banks and Mr. Banks are different individuals.

6

> mental health problems and feels that a single cell will be better for him in case something happens. Mental health assessment indicates that he has no SI/Hi was competent, no psychosis was pointed out to inmate that this was addressed on 12/21/2011 to no avail.

*Id.*

On January 9, 2012, Cooper wrote a letter of complaint that Moulden stated that his concerns were security, not psychological concerns. *Id.* at 27.

On January 25, 2012, Moulden wrote on Cooper's chart that he had submitted an inmate letter regarding the Administrative Remedy Procedure ("ARP") process. Moulden indicated the ARP concern was not a psychological issue. *Id.* at 29.

On February 13, 2012, Cooper filed an inmate sick call request. He complained he was "physically forced" into double cell housing, and attacked by his cellmate on January 31, 2012 and February 13, 2012.[9] *Id.* at 33. Moulden's noted on the request that on February 17, 2012, Warnick met with Cooper. *Id.*

On February 16, 2012, Karen A. Stratton, RN, wrote that a letter was received from Cooper via institutional mail addressed to "Mrs. Mindy psychiatric nurse." *Id.* at 34. In the letter Cooper stated "his life is in danger" and that the custody issue leaves "but two choices for me. To kill myself before they do and/or don't eat and die. God bless." *Id.* Stratton provided "verbal referral on contents of letter" to mental health provider Bruce Liller. Stratton noted Cooper's electronic patient health records (EPHR) showed no indication of mental health issues. "No prescriped[sic] psychotropic medications." *Id.* Cooper reported that morning he was on a hunger strike. *Id.*

Later that day at 3:10 pm, Baker reported Cooper informed her, "I am currently on a hunger strike and if necessary I have plenty of pills," apparently in reference to blood pressure

---

[9] Cooper alleged that on January 31, 2012, he was forced into a double cell by correctional officers. ECF 1-1, pp. 16-18. The court found Cooper's allegations conclusory and unsubstantiated, and granted summary judgment in favor of defendants as to this claim. ECF 34 at 28-29, ECF 35.

7

pills in a blister pack he was permitted to keep on his person. *Id.* at 35 Per Bruce Liller, Cooper was placed on suicide alert. He was placed in a "safe cell" smock as a suicide precaution. Baker also made arrangements for Cooper to be given his blister pack medication on a "watch-take" basis. *Id.*

On February 17, 2012, Vicky Warnick, LCSW-C, met with Cooper for crisis intervention. Her notes indicate she provided cognitive behavioral intervention and read:

> It was brought to the attention of Psychology afternoon of 2/16/12 that inmate was claiming to be on a hunger strike and making suicidal threats to take his BP meds in his KOP blister pack. IM was placed on suicide precautions prior to my leaving for the day. This morning IM Cooper is remorseful for "manipulating Mindy to try and get psychology attention." When asked if he has written to Psychology, inmate responds "no." We discussed the process of self-referring, and inmate has been aware of the process. Inmate went on to allege that he has been beaten by other cellmates (2 in the past), and CO's. He claims to have mental illness and the need for a single cell psych status. He claims to have no ability to defend himself and show me his bruises from the last fight. IM is alert, oriented, walking around freely, does not present with the appearance of being weak or frail in any way. He keeps saying he is sorry for pretending to be suicidal and states, "Ms. Warnick, if I was suicidal, I would never tell you. I would just do it!" IM will be placed back in his double cell and encouraged to communicate with psychology via inmate request. IM was informed again that he does not qualify for single cell status.

*Id.* at 36.

On March 6, 2012, Cooper wrote to Mrs. Janette, Psychiatric Nurse, requesting to speak to someone about his alleged psychological and security issues. *Id.* at 40. A notation was made on March 9, 2012, that Cooper was encouraged to contact case management staff about his concerns. *Id.*

On March 19, 2012, Warnick met with Cooper who reported he was on a hunger strike. Warnick observed Cooper showed no signs of fatigue although he had lost a few pounds. Her notes read:

8

> After weight check today inmate was placed in a holding cell prior to being seen and angry that he had to wait 20 minutes for Psychology. When he arrived, inmate stated he was "paranoid" in the holding cell and wanted to go back to his own cell to wait. Inmate is alert, oriented, mood is angry. Inmate alleges how he was "wrestled in the cell by CO's in the past, and beaten up by cell mates." When he is confronted with the status of his current cell mate leaving for population soon, inmate Cooper agreed that his "hunger strike" is a way of getting a single cell. Inmate is counseled again (see past EPHR notes), on malingering for secondary gain. He is also informed that he does not qualify for a single ad psych cell. He then states that if he continues with his hunger strike, he will be in a weakened state and will need protected [sic] via single cell. He was informed that his physical weakness will be a medical issue and not a psych issue. It is discussed with inmate Cooper that being on e [sic] hunger strike is a choice and his right to self determination [sic] will be fostered. He was encouraged to address his security concerns (as he has done many times before) with his HU Lt. IM offers no alternative solutions to getting a single cell. There are no psychological symptoms present today. Although IM claims to be "paranoid" this does not qualify for an adseg [sic] single cell, even if he were truly symptomatic. Initial report of Hunger Strike [sic] was completed. Inmate will be monitored according to policy.

*Id.* at 48.

On March 20, 2012, Cooper ceased his hunger strike after Lt. D.L. Smith informed him another inmate would not be celled with him until his until the situation was investigated. *Id.* at 51, 52.

On March 22, 2012 and 28, 2012, Cooper wrote letters complaining Warnick told him that he was "playing games." *Id.* at 53-54, 56.

As noted, Cooper provided no verified exhibits or declarations to refute the motion to renew summary judgment. He summarily states only that he "does not agree with the defendants' factual allegation in the supplement and the complaint." ECF 43.

## C. Analysis[10]

Inmates are entitled to receive reasonable treatment for serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Failure to provide treatment, when indicating a "deliberate

---

[10] The standard of review outlined in court's earlier memorandum (ECF 34) is incorporated herein.

9

indifference to serious medical needs of prisoners" results in "the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." *Id.* at 104. Inmates also have an Eighth Amendment right to be free from deliberate indifference to their serious psychiatric needs. *See Comstock v. McCray*, 273 F.3d 693, 702 (6th Cir. 2001). There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The right to such treatment is based upon the essential test of medical necessity and not whether such care is considered merely desirable. *Id.* at 48.

Cooper's mental health records refute his self-reported diagnoses that he suffers battered person syndrome," post-traumatic stress disorder (PTSD), and paranoia as a result of incidents with his cellmates. Psychology staff members have met with him to address his concerns. Of import, their reports do not substantiate his symptoms or self-diagnosed mental conditions. Mental health providers have observed no symptoms of paranoia or other psychological symptoms during their meetings with Cooper. *Id.* at 18, 21, 48. Cooper's electronic showed no indication of mental health issues or prescriptions for psychotropic medications." *Id.* at 35. When Cooper expressed he was having thoughts of suicide, he was placed on suicide alert and provided with crisis intervention services. *Id.* at 35-36. This information is consistent with evidence submitted by defendants with their first dispositive motion to address Cooper's claim

10

he was deprived of mental health treatment between October 22, 2013 and December 5, 2013, by Ronald Weber, a mental health professional at WCI. *See e.g.* ECF 34 at 31; ECF 27-15 at 11 (indicating that Cooper stated during a hunger strike on August 16, 2013, "I am willing to die if I have to because they are not taking care of my safety, property, health & other issues"); ECF 27-28; ECF 27-16

Cooper's records suggest his self-diagnosed psychological ailments stem from to his desire to obtain single cell housing. For example, Cooper told Dr. Banks that he needs a single cell because he feels threatened by inmates, and denied having any serious mental health problems. ECF 41-4 at 21. When he met with Moulden, Cooper persisted in talking about his cell placement despite Moulden's attempts to redirect him to matters of psychological concern. *Id.* at 18. After Cooper was placed on suicide precautions, he expressed remorse for pretending to be suicidal, and then claimed he has a mental illness and needs a single cell assignment. *Id.* at 36. Notably, mental health providers have counseled Cooper about malingering. *Id.* at 48. Providers advised Cooper his safety concerns are not psychological issues, and recommended he contact correctional staff about his cell assignment concerns, *id.* 18, 48, ECF 27-15 at 28, and he has done so. *See* ECF 41-4 at 30, 45.

Cooper's undisputed records show he does not have a psychiatric diagnosis to warrant his assignment to single cell status for psychological need. *Id.* at 21, 36. While Cooper may not agree with the mental health care he has received, the record demonstrates he was seen for his complaints multiple times. Providers responded to his concerns that he might harm himself and/or others, and he was placed on staff alert and provided cognitive therapy as was deemed appropriate. His disagreement with his mental health providers concerning his diagnosis or need for a single cell does not support a claim of constitutional moment. Moreover, Cooper provides

no evidence to refute the psychological records provided by defendants and no genuine issue of material fact is presented, and defendants are entitled to summary judgment in their favor as a matter of law.

This claim is subject to dismissal on summary judgment in light of the evidence provided concerning Cooper's psychological status, and the evaluation and treatment he was provided.

## CONCLUSION

For these reasons, the court will grant defendants' supplemental motion to renew their motion for summary judgment. ECF 41. Judgment will be entered in favor of defendants and this case will be closed by separate order to follow.

_6/8/16_
Date

J. Frederick Motz
United States District Judge

BY_____ DEPUTY
AT BALTIMORE
CLERK'S OFFICE
2016 JUN -8 AM 11:49
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
FILED